Noel's Ex'r, &c., v. Gill, &c.

---

CASE 85—PETITION EQUITY—SEPTEMBER 21.

# Noel's Ex'r, &c., v. Gill, &c.

APPEAL FROM HOPKINS CIRCUIT COURT.

STATUTE OF FRAUDS—REFORMATION OF DEED FOR MISTAKE.—The statute of frauds does not prevent a court of equity from reforming the written evidence of a contract within the statute by enlarging or restricting the terms or the subject-matter of the contract, so as to make it express the contract really made whenever it is clearly shown that either the terms or the subject-matter of the contract, as it was intended and understood by the parties to it, is not embraced in the writing.

In this case the contract was for the sale of all the lots owned by the vendor, over which the road-bed of the vendee, a railroad com-

VOL. 84—16.

pany, was constructed in whole or in part. The deed to the company by mistake designated the lots conveyed as Nos. 8 and 9, whereas the road-bed was constructed on lots 6, 7 and 8.

*Held*—That the deed should be reformed so as to include lots 6, 7 and 8, and release lot No. 9, if the rights of innocent purchasers have not intervened; but a railroad company, which has bought only the title of the original vendee, and is asking that the deed be reformed, is not to be regarded as an innocent purchaser of lot No. 9.

A. DUVALL FOR APPELLANT.

1. The least certain and material parts of the description in a deed must yield to those which are most certain and material, if they can not be reconciled. Therefore, that part of Noel's deed which describes the property conveyed as the "same over which the parties of the second part have constructed their railroad" must yield to other parts of the deed which are absolutely certain as to quantity, location and boundary. (4 Kent, 546.)

2. The fact of a mistake in drawing a written contract must, as any other fact, be averred directly, positively and certainly. It will not do to aver. as is attempted in this case. that if the writing can not be construed to mean. a certain thing, then a mistake was committed by all the contracting parties in drafting it. .6 J. J. Marsh., 480; Story's Eq. Jur., sec. 110; 2 Bibb, 322; 3 J. J. M., 578.)

3. The statute of frauds forbids the granting of the relief asked in this case. (Harrison v. Talbott, 2 Dana, 268; Churchill v. Rogers, 3 Mon., 81; Fowler v. Lewis, 3 Mar., 444, and other authorities cited by Judge Robertson in his dissent in Worley v. Tuggle, 4 Bush, 183.)

4. The evidence does not establish the alleged mistake. To entitle a party to relief in such cases the mistake must be "clearly made out by proof entirely satisfactory." (1 Story's Eq. Juris., sec. 152; Mattingly v. Speak, &c., 4 Bush, 316; 2 Bibb, 323; *Ibid.*, 246; 4 Dana, 614; 6 Bush, 365; 4 Bush, 168; 12 Bush, 408.)

W. L. GORDON AND W. LINDSAY FOR APPELLEES.

The evidence shows that G. W. Noel sold and conveyed lot No. 6 to the Evansville, Henderson & Nashville Railroad Company. Therefore, the judgment of the circuit court should be affirmed.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

Appellant brought suit in ejectment in the Hopkins Circuit Court against Gill & Randall to recover·

the possession of a lot of ground, No. 6, situated on the north side of Main Cross street, in the town of Madisonville, which lot contained twenty-five feet front, and ran one hundred and forty-five feet back.

Randall answered, disclosing the fact that Gill was his tenant, and that he held said lot by the authority of the Louisville & Nashville Railroad Company, which was the owner of said property, and asked that said company be allowed to defend. The company appeared and answered.

The answers of Randall and the company disclose that the Evansville, Henderson & Nashville Railroad Company bought all of the real property owned by appellant from him situated on said street, on which to construct its road-bed ; that said purchase included for said purpose lots Nos. 6 and 7, 8 and 9. And if the deed, which was made some time after said purchase, and which the company exhibited with its answer, failed to cover all of said property, then the omission was the result of a mistake. It asked in that case that the deed be reformed so as to cover it. Appellant, in his reply, denied that, by the terms of said contract of sale, lots Nos. 6 and 7 were included, or intended to be included. That, by the terms of sale, only lots 8 and 9 were sold to the Evansville, Henderson and Nashville Railroad Company.

The deed exhibited by the Louisville & Nashville Railroad Company from appellant to the Evansville, Henderson & Nashville Railroad Company, describes the lots sold to it as lots Nos. 8 and 9, situated on the north side of Main Cross street, in the town of

Madisonville, and containing 50 feet front and running back 145 feet, and the same property over which the company had constructed its railroad. Also, as the same property that had been conveyed by Watkins, commissioner, to appellant. The deed was made in 1870.

The proof in the case satisfactorily shows that in 1869 the Evansville, Henderson & Nashville Railroad Company proposed to buy from appellant simply a right of way, for the location of its road-bed, over the lots of appellant situated on the north side of Main Cross street, in the town of Madisonville; that appellant, believing that the location of the road-bed on parts of his lots would destroy the value of the remaining parts, declined to sell simply the right of way, but proposed to sell all of the lots that he owned on said street on which the road-bed would be located. This proposition was accepted by the company. The sale thus made was verbal.

It also appears that, at the time of this verbal sale, appellant did not remember that he owned lots 6 and 7; having sold said lots to Israel Davis several years before by title bond, and Davis having failed to pay for them, the contract of sale was rescinded, and the property reverted back to appellant, which fact he had forgotten at the time he sold said lots to said company; he therefore supposed that he owned only lots Nos. 8 and 9.

It also appears that, at the time of said sale, appellant did not know the precise location or identity of any of said lots, nor did said company.

After said sale appellant and said company, dif-

fering about the price that ought to be paid for said property—appellant contending that as there was a tobacco factory belonging to him situated on the property sold which would have to be destroyed, the price ought to be more—left the matter to arbitrators to settle.   The arbitrators fixed the price, including the factory, at one thousand dollars, which was paid, and appellant then made the deed, above referred to, to the company.

Appellee is positive in his testimony that said factory was situated on lots Nos. 8 and 9, and not on lots Nos. 6 and 7.   Another witness, who testified for appellant, gave it as his opinion that said factory was situated on lot No. 10.

Appellees are equally positive that said factory was situated on lots Nos. 6 and 7, and not on Nos. 8 and 9.   It may be regarded as a fixed fact, that appellant thought he was selling, and intended to sell, the lots on which the factory was located; so if it is a fact that the factory was located on lots Nos. 6 and 7, then the question is at once settled that said lots were included in the terms of sale.

On the part of appellees, it was proven by the county surveyor that he surveyed all of said lots carefully and accurately, and that said factory was situated on lots Nos. 6 and 7; also, that he did business in said factory just before it was torn down by the Evansville, Henderson & Nashville Railroad Company, and knows that the factory was situated on lots Nos. 6 and 7.   Another witness swears that Israel Davis, the person that once

owned said lots by purchase from appellant, built said factory on lots Nos. 6 and 7, and that he helped to build it. Other witnesses, who were well acquainted with the factory and its location, from the time it was built until torn down, swear that it was located on lots Nos. 6 and 7. Also one of the contractors to construct that portion of the railroad bed over said lots swears that said factory, being in the line of the road-bed, was torn down by the orders of the company. He also fixes. its location on lots Nos. 6 and 7.

So we have no hesitation in saying that the weight of the evidence clearly establishes the fact that the factory was situated on lots Nos. 6 and 7, and not lots Nos. 8 and 9, or any part of them. It is also clear that said railroad bed is on parts of lots Nos. 6, 7 and 8, but is not on any part of lot No. 9. The proof is also clear that appellant intended to, and did sell to said company, all of the lots on which its road-bed was constructed, in whole or in part, but no more. It is also clear that the deed made by appellant to said company does not embrace, by mistake in the draftsman, all of the lots sold. This mistake evidently grew out of the fact that neither party knew the identity or quantity of the property sold.

The lower court, upon these facts, attempted to reform the deed, so as to make it conform to the terms of the contract made between these parties, by decreeing that appellee, the Louisville & Nashville Railroad Company, was entitled to the four lots, Nos. 6, 7, 8 and 9.

Appellant has appealed from that judgment. The first question presented is, had the court the power to reform the deed, and make it conform to the terms of the contract? That question being decided affirmatively, the second question is, did the lower court reform the deed on equitable principles to both parties?

All mistakes occurring in agreements, executed or executory, relate either, first, to the terms of the contract, or, second, to the subject-matter of the contract. The terms of the contract may be stated according to the intention of the parties, but there is an error of one or both in reference to the property to which the terms apply—such as a mistake in reference to its identity, situation, boundaries, title, quantity or value.

Here the terms of the contract were, the sale to appellee's vendor of all the lots owned by appellant, on the north side of Main Cross street, over which the road-bed was constructed in whole or in part. The mistake occurred in reference to the identity, location and number of lots included in the terms of sale.

The appellant's attorney suggests that, although the mistake may exist as to the subject-matter of the contract, yet as the statute of frauds requires the contract to be in writing, parol evidence can not be heard to correct the mistake, because that would be virtually making a contract by parol evidence that the statute of frauds required to be in writing.

The courts of a few of the States have held that

contracts required by the statute of frauds to be in writing could only be corrected in the single instance of a mistake in reference to the subject-matter of the contract, where the error consisted in including more, for instance, land, in the written contract, than the parties intended, in which case parol evidence might be used to show that the surplus should be omitted or eliminated from the contract as written, and confine the operation of the contract to the remaining subject-matter mentioned in it, and to which the parties intended the contract to apply. The reason assigned for thus limiting the reformation of a contract required by the statute of frauds to be in writing is, that parol evidence in that case does not conflict with the statute of frauds, since the relief does not make a parol contract required by the statute of frauds to be in writing, but simply narrows a written one already made.

The courts of the States that have put the most stress on this doctrine had no general equity jurisdiction, but only such limited equity jurisdiction as the statutes of the State conferred upon them. This view of the question, therefore, grew out of that fact. A few other States, however, with general equity jurisdiction, followed in the same line of thought.

On the other hand, the courts of a large majority of the States have held that contracts required by the statute of frauds to be in writing may be reformed by courts of equity, so as to enlarge or restrict the terms or the subject-matter

of the contract whenever it is clearly shown that the written contract, by fraud or mistake, does not embrace either the terms or the subject-matter of the contract, as it was intended and understood by the parties to it.

The courts of equity go upon the ground that the statute of frauds is no real obstacle in the way of administering equitable relief, so as to promote justice and prevent wrong. They do not overrule the statute, but, to prevent fraud or mistake, confer remedial rights which are not within the statutory prohibition. In respect to such needful remedies, the statute as to them "is uplifted." It has also been said, that in case of a written conveyance of land, which does not convey as much land as was agreed, or different or more land than was intended by the parties, the court will fasten a personal obligation upon the party benefited by the mistake to correct it, upon the ground that he was holding the property as trustee.

Whether the parol evidence offered to correct the writing on account of fraud or mistake shows the verbal contract to be broader than the written instrument—covering more or a different subject-matter, or enlarging the terms—or is narrower than the written instrument, either in the terms or subject-matter of the contract, courts of equity will grant relief by reforming the contract, so as to prevent fraud or mistake. The statute of frauds, in granting such relief, is not violated, but "is uplifted," that it may not perpetrate the fraud that the Legislature designed it to prevent.   (See Pomeroy's

Equity Jurisprudence, section 867, and the authorities there cited.)

Also, the majority of this court, in the case of Worley v. Tuggle, &c., 4 Bush, 168, held the same doctrine. The same view has also been held since then by all the members of this court. We adopt them now as correct.

We think the court did right in reforming the deed to make it conform to the contract of the parties, but think it erred in adjudging that appellee, the Louisville & Nashville Railroad Company, was entitled to all four of said lots.

As we have said, it is clear that appellant intended to sell, and did sell, all of the lots he owned on the north side of Main Cross street, to the Evansville, Henderson & Nashville Railroad Company, on which the road-bed of the company was constructed, in whole or in part, but no more. It is also clear that lot No. 9 was not needed or used by said company for said purpose. The road-bed does not touch it, but is constructed on lots Nos. 6, 7 and 8. Therefore the lower court, upon equitable principles, should have reformed the deed so as to cover lots Nos. 6, 7 and 8, and have quieted appellee's title to them; and also, unless the rights of innocent third parties have intervened, have reformed the deed as to lot No. 9, so as to release said lot from said deed and restore the title to appellant.

As the appellee, the Louisville & Nashville Railroad Company, bought only the title of the Evansville, Henderson & Nashville Railroad Company, as above set forth, and is itself seeking to reform said

·deed to conform to the terms of sale, it can not be regarded as an innocent purchaser of lot No. 9, and is not, therefore, included in the suggestion just made ·as to the rights of innocent third parties intervening.

For the foregoing reasons the judgment of the lower court is affirmed, in so far as it reformed the ·deed and quieted the title to lots 6, 7 and 8, to appellee, the Louisville & Nashville Railroad Company, ·and is reversed as to lot No. .9, with directions to restore the title to said lot to appellaant, and for ·other proceedings consistent with this opinion.