J. H. GRIFFIN, APPELLANT *v.* SALT LAKE CITY, RESPONDENT.

*Contract—Reformation of—Mutual Mistake—Practical Construction.*

> Where by inadvertence and mutual mistake, a written contract is made to express a meaning not intended and never suggested by either party, and at variance with the practical construction of it by both parties, the contract will be reformed and corrected so as to comply with the original agreement and practical construction of the parties.

(Decided December 8, 1898.)

Appeal from the Third District Court, Honorable Ogden Hiles, *Judge.*

Action by J. H. Griffin against Salt Lake City to reform a certain contract between plaintiff and defendant. From a judgment for the defendant, plaintiff appeals. Reversed.

*Messrs. C. F. & F. C. Loofbourow,* and *Messrs. Richards & Richards,* for appellants.

In 2d Pomeroy's Equity, Section 845, in is said: "If * * * after making an agreement in the process of reducing it to written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief. * * *"

To the same effect see, *Stockridge Iron Co.* v. *Hudson Iron Works*, 107 Mass. 290; *Canedy* v. *Marcey*, 13 Gray, 373; *Green Bay, etc.* v. *Hewett*, 62 Wis. 316; *Beardsley* v. *Knight*, 10 Vt. 185; *Minot* v. *Tilton*, 64 N. H. 371.

"A construction adopted and acted upon by both parties will be regarded as worked into the contract." *Railroad Company* v. *Stanchfield*, 42 Ohio St. 454; *Stone* v. *Clark*, 1st Metcalf, 378; *Western Railroad Company* v. *Smith*, 75 Ills. 496

*W. C. Hall, Esq.*, and *C. B. Stewart, Esq.*, for respondent.

There is no evidence of an express promise on the part of respondent that the contract was so, or should be made so.

Proof of the existence of negative facts and circumstances from which a tacit understanding may be inferred is not sufficient. Such proof is not the equivalent of proof of an express promise that the contract or writing shall be, and be taken to mean the same as if it contained the reformatory words alleged in the complaint and sought to be incorporated therein.

In the case of *Deseret National Bank* v. *Burton, et al.*, —— Utah, ——, this court held that where, as here, a written instrument is asked to be reformed, the plaintiff must make out his case beyond a reasonable doubt that there was an effectual express agreement. See also *Chambers* v. *Emery*, 45 Pacific, 194–195.

Miner, J.

By direction of the respondent, Salt Lake City, its street committee caused to be published the following notice for bids for sprinkling streets in Salt Lake City: "Proposals for Street Sprinkling. The sprinkling committee of the city of Salt Lake, will receive bids for sprinkling the streets of Salt Lake until Monday, May 18, 1896, as follows: separate bids must be returned for one, two and three years' contracts:

"Bids will be for sprinkling districts one, two, three and five, as shown on the plat in the office of the city engineer, and must also give a price *per week per block* for such extra sprinkling as the City Council may hereafter determine on."

The plaintiff Griffin, in response to this notice, made the following bid:

"Salt Lake City, Utah, May 18, 1896.

"E. M. LeProhon, chairman, street sprinkling committee.

"*Dear Sir:*—I beg to offer the following bid for street sprinkling, as per your advertisement hereto attached:

"I will sprinkle districts 1, 2, 3 and 5, viz.:

"One year contract, $1,775.00 per month.

"Two years' contract, $1,625.00 per month.

"Three years' contract, $1,450.00 per month.

"All other blocks that may be sprinkled to be at $2.45 per block per week, for time actually sprinkled, if regular size; others proportionately the same. This last to apply in case either proposition is accepted. Find certified check, favor J. L. May, city treasurer, as required. I have everything in readiness to cover those districts at once, if either proposition is accepted.

"Respectfully submitted,

"J. H. Griffin."

On May 26, 1896, this with other bids previously received were opened at a meeting of the city council and referred to a committee consisting of the whole council, who reported in favor of accepting the plaintiff's bid, as follows:

"REPORTS OF SELECT COMMITTEES.

'We, your committee of the whole, beg leave to report as follows in the matter of the bids of J. H. Griffin, Frank Harrigan and B. F. Redmon, for sprinkling the streets of this city, which were referred to your committee at the last session of the council:

"Upon due consideration, we recommend that the bid of J. H. Griffin to sprinkle the streets of the city on a three years' contract at fourteen hundred and fifty dollars ($1,450.00) per month be accepted, with the understanding that the said contract shall begin on the first day of June, 1896, and shall expire on the 31st day of December, 1898.          Respectfully submitted,

M. E. MULVEY, Chairman."

This report was adopted by the city council. The draft of a contract for street sprinkling was submitted to the City Council at the same meeting and approved, and the mayor signed the contract on the part of the city, and the plaintiff signed it in the form as drafted by the city attorney, without consulting his own attorney, believing that the contract drawn embodied the contract as made.

The plaintiff in his complaint alleges that by mutual mistake of the parties a material stipulation of the terms agreed upon was omitted from the contract with reference to sprinkling outside districts. The clause in regard to sprinkling outside the districts 1, 2, 3, and 5, as it was drawn by the city attorney and now appears in the contract, reads as follows:

"And it is further mutually agreed by and between the parties hereto, that if at any 'time during the life of this agreement, *said first party shall request it*, said second party shall sprinkle any other streets within the limits of said city and not embarced within the sprinkling districts aforesaid, at the stipulated price of two dollars and forty-five cents per week per block, where the streets are 100 feet wide between the curbs; it being understood and agreed between the parties hereto, that for the purposes of this contract, a block shall be taken to be 792 feet in length, that being the difference between the center of intersections in the regular sized blocks of said city, and if any larger or smaller blocks, or wider or narrower streets are required to be sprinkled under this clause of said contract, such larger or smaller areas shall be paid for in the same proportion as above stipulated, and for the number of weeks said second party is actually engaged in said extra sprinkling and not otherwise."

The plaintiff contends that such contract, in order to express the agreement of the parties in that respect should read as follows:

"It is further mutually agreed by and between the parties hereto, that if at any time during the life of this agreement said first party *shall determine* to have the streets or walks within the limits of the city, and not embraced within the sprinkling contract aforesaid, sprinkled, the work of sprinkling the same shall be awarded to and shall be performed by the plaintiff at the stipulated price of $2.45 per week per block."

The respondent claims that under the contract, as drawn, the plaintiff, Griffin, was bound to do all the extra sprinkling the city might call upon him to do, yet the city was not bound to give him any of the extra sprinkling, but could give it to anyone as it chose. In other words,

that this part of the contract was unilateral; that Griffin was bound, but the city was not. Griffin did all the extra sprinkling for one year following the execution of the contract, and was paid the stipulated price therefor without any question being made by the city as to the meaning of the contract. After the expiration of one year the city let the contract to other parties at a cheaper rate, over the objection of the plaintiff, and thereupon this complaint was filed to reform the contract.

It appears to us that the contract between Griffin and the city was evidenced by the printed advertisement for bids to sprinkle the streets named and such other extra sprinkling as might thereafter be required, the bid of Griffin, and the acceptance of such bid by the city. These three documents were in writing, and there is no claim that there was ever any modification of such writing. The city attorney was directed by the city to place the contract in proper form to conform to the agreement. The advertisement was for bids for sprinkling districts 1, 2, 3, and 5, as shown on the plat, and the person bidding was required to give the price per week per block for such extra sprinkling as the city council might afterwards determine to have done, and separate bids were required for sprinkling on one, two, and three years' contracts. At this time certain parts of the city were included in the four districts named. While other parts of the city were in no districts. Consequently under the advertisement bidders were required to cover the streets of the city outside of the four districts by their bids. The city evidently desired to keep within its own control the sprinkling of all outlying streets and blocks. It was therefore desirable to obtain the price per week for sprinkling each block, and the bidder was required to include the outlying streets as a part of his bid.

In making his bid the appellant conformed to all the requirements of the printed advertisement. His bid was to sprinkle districts Nos. 1, 2, 3, and 5, on one year contract for $1775 per month, on two years contract for $1625 per month, and on the three years contract $1450 per month, and all extra blocks that may be sprinkled to be at $2.45 per block per week for the time actually sprinkled for all regular sized blocks; others proportionately the same. *This last to apply in case either proposition is accepted.* Presumably the price of the bid for three years was lessened on account of the prospect of securing the extra sprinkling under the bid made. The prices fixed on each were probably graduated and reduced because of the extra amount of work required. This proposition was to do all the sprinkling for one year at a certain price; two years at a certain price, and three years at still another price, and the extra sprinkling was to be done at another price, which sprinkling the appellant was to do in case either of the three propositions were accepted. The bid for extra sprinkling was a part of his proposition to sprinkle and accompanied his bid as a part of it, and inseparable from it. If either the one, two or three years proposition was accepted, the condition made was that the extra sprinkling was a part of such proposition accepted. The committee of the whole composed of the city council, to whom the proposition was referred, reported that ''upon due consideration, we recommend that the bid of J. H. Griffin to sprinkle the streets of the city on a three years contract at $1450 per month be accepted."

This report was adopted by the city council. By the proposition made Mr. Griffin offered to sprinkle districts 1, 2, 3, and 5, at $1,450 per month for three years, and to sprinkle all other streets that the city should determine to have sprinkled at $2.45 per block per week, and this propo-

sition made as an indivisible proposition was accepted by the city. The contract as drawn by the city attorney, while it referred to the extra sprinkling, did not contain this agreement as made by the parties, but left it optional with the city whether Griffin should do the sprinkling or not. If it was the understanding that Griffin should only sprinkle the four districts, the contract should have so stated. In such case that part of it having reference to sprinkling outside streets should have been omitted. The fact that the committee reported that Griffin's bid to sprinkle the streets on the three years' contract at $1,450 per month be accepted, by no means excluded the outside sprinkling proposition in his bid. . Had such been the intention of the parties no agreement would have been inserted in the contract to the effect that such sprinkling should be done by Griffin at $2.45 per week per block, if the city should request it. The insertion of this clause in the contract, and the respondent's reliance thereon, negatives the assertion that only the three years' proposition was accepted by the city. It is evident from the advertisement, the bid and acceptance, that the city expected extra sprinkling done outside of the four districts, but could not say until later in the season how much or where such sprinkling should be required; yet it desired a contract for a specified time and price per block for doing such work, but reserved to itself the right to determine how much work of that kind it would have done, and that in accepting the bid of Mr. Griffin it intended to award him the right of sprinkling such outside blocks and streets as it should thereafter find necessary to sprinkle at the price named.

This view is strengthened from the fact that the parties themselves placed this construction upon the contract. During the first year of its existence the city council did

from time to time, order that certain outside streets be sprinkled. These orders were silent as to who would do the work. The street committee would usually notify Griffin of the order made, and Griffin sprinkled the blocks. At the end of the month Mr. Griffin would present his bill for the extra sprinkling, and it would be paid at the price mentioned in the contract, together with his bill named in the contract for sprinkling the four districts. During the first season no question was ever made by the city council, or any member of it, that Griffin was not entitled to this extra work under his contract. The whole course of business conduct of these parties was an admission of Griffin's right to do this extra sprinkling.

It is held to be a general rule that when in the performance of a written contract both parties thereto by their acts, place a practical construction upon it which is at variance with its literal meaning, that construction will prevail over the language of the contract. *Dist. of Columbia* v. *Galligher*, 124 U. S., 505; *Stone* v. *Clark*, 1 Metc., 378.

In further confirmation of the appellant's contention, the testimony of the plaintiff, the mayor, and many members of the city council, so far as pertinent, tended to show that the agreement as contended for by the appellant, should have gone into the contract, but for inadvertence and mutual mistake, the writing was made to express a meaning which was not intended and had never been suggested by any party to the contract.

From the whole record, we are clearly of the opinion that the written contract should be reformed and corrected, as prayed for by the plaintiff in his complaint.

The cause is reversed and remanded with directions to the trial court to modify the findings, and set aside the

decree entered therein, and to enter a decree for the plaintiff, in accordance with this opinion.

Plaintiff should recover costs of both courts

ZANE, C. J., and BARTCH, J., concur.