## BRONK *v.* STANDARD MANUFACTURING CO.

1. REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.
    On a bill to reform a lease by striking out certain words therein, evidence considered, and *held*, sufficient to show that the words complained of were inserted through a mistake of the scrivener.

2. SAME—LEASE BY CITY.
    The provision of the charter of the city of Jackson that no real estate or interest therein shall be disposed of unless by ordinance or resolution of the common council, does not prohibit reformation by the court of a lease of city property, executed pursuant to a resolution.

3. SAME—LACHES.
   A delay of three and one-half years in seeking reformation of a
   lease, *held*, not fatal where, up to a time immediately preceding
   the filing of the bill, all parties agreed upon a construction of
   the lease in accordance with its meaning as reformed.

Appeal from Jackson; Parkinson, J.  Submitted June
13, 1905.  (Docket No. 181.)  Decided November 21,
1905.

Bill by Edgar Bronk against the Standard Manufactur-
ing Company and the city of Jackson to reform a lease.
From a decree for complainant, defendant Standard Manu-
facturing Company appeals.  Affirmed.

*Wilson & Cobb*, for complainant.

*Thomas E. Barkworth*, for appellant.

MONTGOMERY, J.  The city of Jackson owned certain
manufacturing buildings, located on North Jackson street,
and known as the "Old Purifier Buildings."  January
20, 1897, the city, by writing, leased a portion of such
buildings, including the heat and power plant, to H. A.
Christy of Chicago.  This lease or agreement, among
other provisions, contained the following:

"It is mutually understood and agreed that the party
of the second part will from time to time during said term
furnish steam for heating and such power as may be nec-
essary for propelling machinery in the other buildings on
said premises, which are not included in this lease, which
may be in operation in carrying on such manufacturing
business in such other buildings as the city may permit to
be carried on there, provided the same shall not require
the furnishing at any time of more than one-half the
power of such plant, and that for all such power and heat
furnished the party of the second part shall receive pay
from the party or person using the same, such rental as
may be agreed upon by the parties furnishing and using
the same."

It is further provided that, in case of disagreement on
the subject, the matter shall be referred to the common

council of the city, and that the expense of procuring an inspection from time to time of the boilers should be regarded as part of the total expense of the power. In March, 1897, the city leased the other buildings on the premises to the defendant, the Standard Manufacturing Company, for a period of five years, with an option to the lessee for an additional term of five years, at an annual rental of $1,500. In 1899, there being about eight years of the unexpired term, Mr. Christy was desirous of disposing of his rights under the lease or agreement with the city. There being some question as to his right to assign this lease, he made application to the common council of the city for a new lease. Such communication was referred to a special committee, and on January 16, 1899, such committee reported to the common council, advising the revising of such contract, which committee reported February 20, 1899, recommending the adoption and execution of the lease in question, with the exception of a single provision not here material. The report of the committee being adopted, the old lease was, by mutual consent, surrendered, and the new lease was duly executed by the mayor and recorder of the city and Mr. Christy. It bears date May 6, 1899, and provides for a term of eight years. The provisions contained in the two leases to Christy in relation to heat and power are identical, except the words "in excess of one-half," inserted in the second lease between the word "furnished" and the word "the." Early in 1899 Christy proposed to assign this lease to the Bronk-Buffinton Shirt Company, a copartnership of which the complainant was a member, and on March 28, 1899, an assignment was executed by Mr. Christy to such firm. The complainant, observing the peculiar wording of the contract, declined to accept the contract until assured that he would not be called upon to furnish heat or power for the other buildings free of charge. Acting upon the suggestion of the complainant, Mr. Christy obtained the written opinion of the assistant city attorney as to the construction of the lease, and also

a statement of the defendant company, signed by its sec-
retary, to the effect that such company would pay for
heat and power furnished it so long as they (the Standard
Company) should desire to and should use such power and
heat.   So long as Mr. Christy held under his lease, the
defendant company paid for the power and heat furnished
it upon a basis of one-half the expense of operating the
power plant, and after the complainant took possession,
under assignment from Christy, such company continued
to pay for heat and power until September 1, 1902, at
which time its first five-year term expired.   After the de-
fendant company had exercised its option to continue its
lease with the city for another five years, and had entered
into a new contract with the city, they wrote the com-
plainant that their agreement regarding heat and power
had expired, and that, "in releasing the plant, we ac-
cepted the assignment of the city to their right for heat
and power, as expressed in their lease with Mr. Christy."
This bill was filed to reform the second lease to Christy
by striking out the words "in excess of one-half."   The
circuit judge decreed the relief prayed, and the defendant
company appeals.   The city does not appeal.

Upon the question of fact, we are satisfied with the
finding of the circuit judge.   It is established to our sat-
isfaction that the revision of the lease to Christy was not had
with a view to changing the terms of the first lease as they
related to rental of power, and that those words were in-
serted through a mistake of the scrivener.   The course of
after dealing is strongly corroborative of the direct testi-
mony which tends to establish this fact.

It is contended by defendant's counsel that, inasmuch
as the charter of the defendant city provides that no real
estate or interest therein shall be sold or disposed of unless
by ordinance or resolution of the common council, the res-
olution authorizing the contract in question is to be treated
as legislative action, and that a contract so made cannot
be reformed, because the freedom of legislative action will
not permit the intervention of judicial authority, and be-

cause it would be impossible to have, in such case, the necessary oral contract upon which the reformation must be based. We think, however, that the answer to the first reason suggests the answer to the other. It is clear that a court would in no case decree a reformation unless the real intent of both parties in the making of the contract was both concurrent and established by proof. The meritorious question is whether the court may reform a contract authorized by the common council where a mistake is manifest. Courts may not reform records of a municipality showing legislative action. The reason for this is that such records must be held to import absolute verity. Public security would be impaired if the verity of recorded legislative action could be made the subject of judicial investigation, on similar considerations to those which support the rule of sanctity which surrounds the verdict of a jury. And yet, in either case, in a direct proceeding by the authority which enacts the law in the one case, or by the court which records the verdict in the other, the recorded action may, by timely action, be set aside and held for naught. The reason why the courts may not correct mistakes in legislative action, or the legislature mistakes in judicial action, is that in its own sphere each department of government is supreme and independent. But does this sanctity obtain as to the action of a municipal body in entering into a contract? Suppose the charter of defendant to require the formal action of the council in executing a deed. And suppose a binding executory contract to execute such deed. Could the council shield itself from the performance of that duty by asserting that, as the charter required a vote of the council to authorize the execution of a deed, the contract could not be enforced by the courts? We think not. The provisions of the charter relating to the execution of contracts are intended as safeguards against hasty action, and designed to provide written evidence of the action of the council, which, when taken with reference to a private contract, should be given the dignity of a contract in writing; but we do not think it becomes in any

sense legislative action. The contract is required to be in writing, so is a deed of land, and yet the latter instrument is subject to reformation; and this notwithstanding the statute of frauds, which requires the contract to be in writing. *Kimble* v. *Harrington*, 91 Mich. 281. And while some doubt was expressed in some of the earlier cases of the power of the court to reform such instruments by adding to the subject-matter of the contract, as by adding descriptions omitted, the current of authority now sustains this power. See an able note to *Williams* v. *Hamilton*, 65 Am. St. Rep. 501 (104 Iowa, 423). See, also, 2 Current Law, 1494.

The same considerations which have led the courts to sustain this power to reform deeds required by the statute of frauds to be in writing impel us to hold that the power exists in the present case. By exercising this power, we do not make a contract. We enforce the contract which the parties made with all the formality required by the statute, but which, by mistake, spoke a different language than that intended. As was well said in *Noel's Ex'r* v. *Gill*, 84 Ky. 249:

" The statute of frauds is not violated, but is uplifted, that it may not perpetrate the fraud that the legislature designed it to prevent."

In the case of *Griffin* v. *City of Salt Lake City*, 18 Utah, 132, the power to reform a contract made with a municipal corporation was exercised apparently without question. In the two cases of *Township of Bernards* v. *Stebbins*, 109 U. S. 341, and *City of Defiance* v. *Schmidt*, 123 Fed. 1, a question closely analogous to that now under consideration was treated. In the former a failure of the public officials to affix a seal was treated as a mistake which might be subject to remedy in equity, even though the statute required a seal. In the latter case the use of the wrong seal was treated as a mistake, and the municipality enjoined from setting up the defense of a want of a seal; although in that case, also, the statute required the

contract to be executed under the seal of the municipality.

We have considered the defense of laches, and are not convinced that the defendant company has equities which preclude the relief asked.

The decree is affirmed, with costs.

McALVAY, GRANT, OSTRANDER, and HOOKER, JJ., concurred.