[No. 2529]

## J. B. WAINWRIGHT, RESPONDENT, v. HARRY DUNSEATH, APPELLANT.

[211 Pac. 1104]

1. FRAUDS, STATUTE OF—STATUTE DOES NOT PREVENT REFORMATION OF INSTRUMENT ON ACCOUNT OF MISTAKE OR FRAUD.

Irrespective of the statute, courts of equity can order the reformation of deeds and other instruments when, through mistake of the parties thereto, or through the fraud or unconscionable conduct of one of the parties amounting to fraud, such instrument does not contain the real terms of the oral agreement between them.

2. REFORMATION OF INSTRUMENTS—EVIDENCE HELD TO SUSTAIN COURT'S FINDING DEED DID NOT CONFORM TO ORAL AGREEMENT.

In a suit to reform a deed, evidence as to the negotiations between the parties *held* to sustain the court's finding that the deed, as drawn by defendant and his attorney, which reserved an easement across the property conveyed for the use of the grantor only, did not conform to the agreement between the parties that such use should be for the convenience of the remaining lots of grantor, so that it should have run to him, his successors, and assigns.

3. REFORMATION OF INSTRUMENTS—EVIDENCE HELD TO SUSTAIN FINDING OF MISTAKE BY PLAINTIFF AND UNCONSCIONABLE CONDUCT BY DEFENDANT.

Evidence that defendant was an attorney, and employed another attorney to prepare the deed from plaintiff to him, and knew that it reserved an easement over the property conveyed only for the use of plaintiff and not for the use of his heirs, successors, and assigns and, therefore, inure to the benefit of plaintiff's remaining lots as agreed, and that plaintiff was unlearned in the law and inquired of defendant whether the deed conformed to the agreement, *held* to sustain the court's finding that the defendant's conduct in failing to inform plaintiff as to the effect of the reservation was unconscionable, so that equity could reform the deed.

4. REFORMATION OF INSTRUMENTS—FAILURE TO CORRECT KNOWN
   MISTAKE OF GRANTOR IS UNCONSCIONABLE CONDUCT.
   Where the grantee in a deed knows that the grantor is
   laboring under a mistake as to the effect of the deed drawn
   by the grantee, his concealment of the effect of such deed is
   unconscionable conduct on his part, which entitles the grantor
   to have the deed reformed.

5. APPEAL AND ERROR—IMMATERIAL FINDING NOT SUPPORTED BY
   PLEADING NOT GROUND FOR REVERSAL.
   Where the finding that a named individual acted as agent
   for the defendant in procuring the deed sought to be reformed
   was not material because unnecessary to sustain the decree, it
   was not essential that the fact so found should have been
   alleged in the amended complaint.

6. APPEAL AND ERROR—BRIEF CHARGING JUDGE WITH UNFAIRNESS
   STRICKEN FROM FILES AS SCANDALOUS.
   A reply brief charging that the trial judge at the time he
   rendered judgment for plaintiff was contemplating the forma-
   tion of a legal partnership with plaintiff's attorneys, which
   was supported only by the fact that, after the judge's resigna-
   tion two months after rendition of the judgment, he formed
   such partnership, and was contradicted by the judge's affidavit,
   which stated that, at the time of the judgment, the partnership
   was not in contemplation, will be stricken from the files as
   containing impertinent and scandalous matter.

APPEAL from Second Judicial District Court, Washoe
County; *E. F. Lunsford,* Judge.

Suit by J. B. Wainwright against Harry Dunseath for
the reformation of a deed. Judgment for plaintiff, and
defendant appeals. **Affirmed.**

*Martin J. Scanlan,* for Appellant:

Where plaintiffs agreed in writing to sell defendants'
land, subject to approval of owner, and acknowledged
an advance payment, the writing naming grantor and
grantee, and defendant in signing agreement referred
to it as a contract of sale, the transaction was a sale,
and the agreement did not constitute plaintiffs defen-
dant's agents. Cartwright v. Ruffin, 96 Pac. 261; Rev.
Laws, 1069, 1071.

Easements cannot be created by word of mouth or
exist by parol independent of the writing. 20 Cyc.
215, 216.

Where a party should inform himself of contents of
instrument he signs, and has full opportunity and means

of knowledge, he will not be allowed to say he has been deceived to his injury by misrepresentations of other party. Randall v. Howard, 67 U. S. 269. Or where instrument is reduced to writing by other person, if no confidential relation exists, and means of knowledge are open to both, he cannot avoid his liability if he signs without reading, though contract is different from the contract as agreed on verbally. Hawkins v. Hawkins, 50 Cal. 558. Mistake of attorney as to law is not sufficient to warrant reformation where no unconscionable advantage is taken. 34 Cyc. 912, 913; 54 L. R. A. 354. Essentials of actionable fraud: 20 Cyc. 12, 13; Pratt v. McLean, 33 South. 185; Wilson v. Wilson, 125 N. W. 385. As to parol evidence: 17 Cyc. 567; Menzies v. Kennedy, 9 Nev. 152.

One cannot be agent for purchaser and seller at same time. Sunderland v. Kilbourne, 3 Mackey, 506. The burden is on party alleging agency to establish it. Martin v. Greene, 3 Ill. App. 257; Shelton v. Todd, 19 Atl. 111.

*Harwood & Tippett,* for Respondent:

Where there is a mistake, or a mistake on one side and fraud or unconscionable conduct on the other, equity will intercede and correct mistake and enforce true understanding or agreement of parties. Pomeroy, Eq. Jur. (3d ed.) sec. 1776; 34 Cyc. 938, et seq.; 23 R. C. L. 328; Kilmer v. Smith, 77 N. Y. 226; Phœnix Co. v. Bailey, 13 Wall. 616.

Defendant was guilty of fraud, because, even though defendant was under no peculiar relation of trust to plaintiff, he was bound to disclose facts and circumstances which plaintiff had a right to know. Fish v. Clelland, 33 Ill. 243.

By the Court, DUCKER, C. J.:

This is a suit in equity for the reformation of a deed. For convenience, the parties will be referred to as they appeared in the court below.

It is alleged in the amended complaint that plaintiff in July, 1919, being the owner of lots 13 and 14 of block 2 of the new South Side addition to Reno, said lots together making one parcel of land having a frontage of 140 feet on Moran street, and 100 feet on Sinclair street, entered into an oral agreement with the defendant, whereby the defendant agreed to purchase a portion of said lot 13. It is alleged also that it was further agreed that defendant should keep and permit an open permanent driveway ten feet in width along the northerly portion of the premises for the use of plaintiff and his grantors, and for the benefit of the remaining portions of said lots 13 and 14, owned by him, so that he and his grantors might have ingress and egress thereto and therefrom.

It is further alleged that defendant is an attorney at law in the State of Nevada, and has been a justice of the peace, and, by reason of his profession and learning and experience, is acquainted with the drawing of legal documents, and, in particular, conveyances of real property, and is familiar with the terms and legal phraseology of deeds of conveyance and other legal documents. It is further alleged that the plaintiff is not a lawyer, and has very little education, and is not familiar with the meaning and the use of words and phrases and legal documents, nor with the legal phraseology used in making deeds of conveyance; that on or about the 30th day of July, 1919, the defendant, assisted by another attorney, employed by him, caused to be written a deed conveying to the said defendant from the plaintiff, the said premises, and which it had been agreed should have been conveyed, and the plaintiff, knowing that defendant was a lawyer by profession and relying upon him, believed that the defendant would include or cause to be included and contained in said deed all of the terms and conditions of the said oral agreement, and, relying upon him so to do, did not discover or notice the omission or mistake in said deed when it was read to him, and was therefore induced

to sign said deed after it was read to him, with the understanding then that it contained all of the terms and conditions of said oral agreement; that he would not otherwise have signed or delivered it to defendant.

It is further alleged that the defendant well knew that the said deed did not contain the true terms and conditions of the oral agreement, and well knew that the plaintiff was relying upon him to see that the said deed contained the same, and, well knowing that plaintiff was relying upon him to see that said deed contained the true terms and provisions of the oral agreement of the parties, did, knowingly and with wilful intent to cast a cloud upon lot 14 and the remaining portion of lot 13, permit plaintiff to execute and deliver the deed without explaining or causing to be explained to the plaintiff, the terms and provisions of the deed.

It is further alleged that in September, 1919, plaintiff learned for the first time that the said deed of conveyance did not contain the provisions of the oral agreement; that the open driveway referred to in the deed did not, by its terms, go to the use of the party of the first part, his heirs and assigns, but for the use of the party of the first part only; and that said driveway was incorrectly described therein; and offered to make, execute, and deliver to defendant a deed of correction in lieu thereof, according to the terms and conditions of the oral agreement, which the defendant refused and still refuses to accept.

The deed conveying the premises to the defendant, his heirs, and assigns, a copy of which is annexed to the complaint, contains the following reservations:

"This deed is given with the express understanding that the party of the second part shall keep and permit an open driveway for the use of the party of the first part along the northerly portion of said conveyed and above-described premises, said driveway to be ten feet in width and particularly described as follows, to wit:" (Here follows a particular description of the driveway, which is admitted to be an erroneous description.)

The trial court found that there was a mistake in the description of the driveway, and that the deed did not correctly or truly express the agreement or understanding between the parties respecting said driveway, in that it did not contain appropriate language reserving the benefit and use thereof to the plaintiff and to his heirs, successors, and grantees, and that the omission of the said words, or language of like import in said deed, was brought about by the fraud and unconscionable conduct of the defendant and his agent, J. F. Butler. A decree was entered annulling the deed of July 30, 1919, and requiring the defendant to accept and record in lieu thereof a deed of correction set out in the decree, in which the reservation concerning the driveway contained in the original deed is amended so as to read as follows:

"This deed is given with the express understanding that the party of the second part, his heirs, successors, and grantees shall keep and permit an open driveway for the use of the party of the first part, his heirs, successors, and grantees, and the heirs, successors, and grantees of the first party since the 30th day of July, 1919, along the northerly portion of said conveyed and above-described premises, said driveway to be ten feet in width and particularly described as follows, to wit:" (Then follows a corrected description of the driveway, which the parties concede to be a true description thereof.)

1. It is contended by the appellant that the deed cannot be reformed to extend the privileges of the driveway to plaintiff's heirs, successors, and assigns, for the reason that any parol agreement made relative to the conveying or reserving of an easement is within the statute of frauds. The contention is not tenable. Irrespective of the statute of frauds, courts of equity have the power to order the reformation of deeds, contracts, and other instruments, when, through mistake of the parties thereto, or through the fraud of one of the parties, or unconscionable conduct amounting to

fraud, such instrument does not contain the real terms of the contract between them. Pomeroy's Equity Jurisprudence (3d ed.) sec. 1376, and cases cited; 34 Cyc. 938; 23 Ruling Case Law, 328; 1 Story's Equity Jurisprudence, sec. 115; Froyd v. Schultz, 260 Ill. 268, 103 N. E. 220, Ann. Cas. 1914D, 225; Noel v. Gill, 84 Ky. 241, 1 S. W. 428; Judson v. Miller, 106 Mich. 140, 63 N. W. 965; Griswold v. Hazard, 141 U. S. 260, 11 Sup. Ct. 972, 35 L. Ed. 678; Ruhling v. Hackett, 1 Nev. 360; Wilson v. Wilson, 23 Nev. 267, 45 Pac. 1009.

In Ruhling v. Hackett, supra, the suit was instituted to reform a mortgage so as to include land not described in it at the time of its execution, and the claim was made that to so reform it would be in violation of the statute of frauds, but this court held to the contrary. The court said:

"The rule that courts of equity have the power to correct mistakes in deeds and other instruments, so as to make them conform to the intention of the parties, is so universally recognized and acted upon, that it would seem scarcely necessary to do more than to refer to a few cases which directly sustain our views upon this question."

Among the cases cited is Taylor v. Luther, 2 Sumn. 228, Fed. Cas. No. 13796, in which the opinion was written by Mr. Justice Story, and from which this court quoted as follows:

"Nothing is better settled than that the true construction of the statute of frauds does not exclude the enforcement of parol agreements respecting the sale of lands in cases of fraud; for, as it has been emphatically said, that would be to make a statute purposely made to prevent fraud, the veriest instrument of fraud; and the same rule governs in case of mistake as of fraud."

In the case of Noel v. Gill, supra, the action of the lower court in ordering a reformation of a deed so as to make it include different lots of land than were described in the parol contract of sale, was upheld by

the appellate court against the claim of the application of the statute of frauds. In reference to this claim, the court said:

"The courts of a large majority of the states have held that contracts required by the statute of frauds to be in writing may be reformed by courts of equity, so as to enlarge or restrict the terms or the subject-matter of the contract whenever it is clearly shown that the written contract, by fraud or mistake, does not embrace either the terms or the subject-matter of the contract, as it was intended and understood by the parties to it. The courts of equity go upon the ground that the statute of frauds is no real obstacle in the way of administering equitable relief, so as to promote justice and prevent wrong. They do not overrule the statute, but, to prevent fraud or mistake, confer remedial rights which are not within the statutory prohibition. In respect to such needful remedies, the statute as to them 'is uplifted.' * * * Whether the parol evidence offered to correct the writing on account of fraud or mistake shows the verbal contract to be broader than the written instrument—covering more or a different subject-matter, or enlarging the terms—or is narrower than the written instrument, either in the terms or subject-matter of the contract, courts of equity will grant relief by reforming the contract, so as to prevent fraud or mistake. The statute of frauds, in granting such relief, is not violated, but 'is uplifted,' that it may not perpetrate the fraud that the legislature designed it to prevent."

We are satisfied that the great weight of authority is in accord with our views, that the statute of frauds has no application in a case of this kind.

The only question remaining for consideration is whether there is sufficient evidence, which, under settled principles of law, sustains the findings of the trial court to the effect that the deed did not truly express the understanding between the parties respecting the

driveway, and that the omission of language in the deed reserving the benefit and use of the driveway to plaintiff and his heirs, successors, and assigns, was due to fraud and unconscionable conduct of the defendant and his agent, J. F. Butler.

2. It appears that the defendant was desirous of purchasing a residence in Reno and was referred to one J. F. Butler, whose property on Sinclair street in that city was for sale. The property had a frontage of 50 feet on Sinclair street. The defendant wanted an 80-foot frontage, and Butler undertook to obtain the additional 30 feet from plaintiff, who owned two lots adjoining Butler's property on the north. These two lots formerly belonged to the latter and had been sold by him to plaintiff. Butler and defendant entered into a written agreement for the sale and purchase of the former's property on Sinclair street, and in which Butler agreed to negotiate a sale of a lot 30 feet wide by 140 feet deep, with the execution of a portion thereof, 40 by 20 feet in dimensions. This lot was the southerly portion of lot 13 belonging to the plaintiff, and which adjoined Butler's property on the north. Plaintiff finally agreed to sell the southerly portion of lot 13 described in the amended complaint, and subsequently executed and delivered to the defendant the deed of July 30, 1919, in which the boundaries of the property granted are incorrectly described.

Upon the question of the understanding of the parties as to the driveway, there is a conflict of testimony, but there is substantial evidence to support the court's findings in this respect. The defendant, who was a witness in his own behalf, testified substantially that it was the understanding that the privileges of the driveway should not extend beyond plaintiff's ownership of the adjoining property. He testified that he told plaintiff that he would not give him the right to transfer that driveway; that he offered him the easement for himself. In answer to questions by the court, he said:

"I gave him thoroughly to understand that, if he transferred that property, his right of way would be gone; that he understood that, and the deeds were drawn that way."

On the other hand, plaintiff testified that it was the understanding that the driveway was to be a permanent driveway for the benefit of the lots. He testified:

"The first conversation that we had about the lots at the time I told him what the price of the lots was. That I would face my houses on Moran street and that the 70 feet wasn't enough, but with the 10 feet to get driving in there that I would sell him the lot for the $800, with the driveway for the benefit of those lots. * * * Dunseath said he would do it."

And again, on cross-examination:

"Q. And it was the intention to have a driveway down through there and to remain open permanently? A. That was the agreement.

"Q. And this driveway was to be for the use and benefit of subsequent purchasers of any lots which you might sell on Moran street? A. Yes."

Plaintiff is corroborated in this respect by the witness Butler, who testified that he was present with the defendant and the plaintiff when the latter agreed to sell the part of lot 13. He testified:

"After Mr. Wainwright agreed to sell the 30 feet, providing there was a driveway maintained through there for the convenience of those lots; why, Mr. Dunseath told me that he would put the money in the Stock Growers' and Ranchers' Bank, and that as soon as the deeds were properly drawn up he would authorize Mr. Fairchild to pay me the money, if I remember right."

This being the state of the testimony in regard to the oral agreement concerning the driveway, the finding of the trial court cannot be disturbed.

3. As to the question of whether the plaintiff is entitled to have the deed reformed so as to conform to the terms of the oral agreement in respect to the driveway, we think there is sufficient evidence to justify the court in finding in favor of plaintiff. According to the

version of plaintiff and his witnesses, Butler, his wife, and defendant went to the offices of S. H. Rosenthal, an attorney at law in Reno, for the purpose of having him prepare two deeds—one from Butler to the defendant for the former's property on Sinclair street, and one from plaintiff to the defendant for the portion of lot 13 agreed upon by them. Mr. Rosenthal testified: That he prepared the latter deed as requested. That he asked Butler as to whether the right of way was to be granted to Mr. Wainwright, or whether those privileges were to go to his heirs and assigns. That Butler and the defendant said it was to go to Mr. Wainwright. That witness then said:

"Well, now, I don't believe that Wainwright would sign a deed of that character if it was—if he was made to know that he, individually, was to have the benefit of this right of way and that the same was not for the benefit of his heirs and assigns."

That they replied that they had had considerable trouble in bringing this thing about in consummating the deal, and to draw it up accordingly. The witness then replied that he would of course read the deed carefully to Mr. Wainwright, and if he found fault with it, of course it would have to be changed. That Butler and defendant furnished the information as to the right of way. That, after he had made a memorandum of the description of the right of way and of the other reservation in the deed, he read it to them, and it was satisfactory. That he prepared the deed and read it to them, and they said it was correct. Plaintiff was then telephoned for and came to the office. Rosenthal read the deed to him in the presence of defendant, Butler, and his wife. Plaintiff asked either defendant or Butler as to whether the deed was all right, and they said it was according to the agreement between them.

Butler's testimony as to the transaction was substantially that he and his wife and defendant went to Rosenthal's office together, and the latter prepared two deeds. One of these was from Butler to defendant for the former's property on Sinclair street, and the other was a

deed from plaintiff to defendant for the part of lot 13. He testified that while Rosenthal was preparing the deeds, defendant and the former had a little conversation, and he heard Rosenthal say: "Well, that will be all right if the old man don't see it," or "Mr. Wainwright don't see it"; to which defendant replied, "Well, that is the way I want it." After the deeds were prepared, Butler telephoned to plaintiff, who came to the office. Rosenthal read the deed to him in the presence of defendant and the others. Plaintiff said: "Well, I guess that is all right." Butler paid Rosenthal for preparing his deed, and Wainwright paid for his deed.

Mrs. Butler testified that while Rosenthal was working on the typewriter, defendant went over and was talking to him. She heard the latter say: "Well, that will be all right if Mr. Wainwright don't notice it." In answer to the question, "What did Mr. Dunseath say to that?" she answered: "I don't think he replied at all, or he said something about 'That is the way I want it,' or some casual remark."

After the deeds were prepared, Rosenthal read them to her and defendant and Butler. When plaintiff came to the office, Rosenthal read the deeds again and said: "Well, how is it?" Plaintiff looked at Mrs. Butler and said: "What do you think, is it all right with you?" Mrs. Butler replied: "Yes, sure; it is all right with me." Plaintiff then said: "All right then; we will sign.'

Plaintiff's version of the transaction is that he came to the office at Butler's request over the telephone, and Rosenthal read the deed. Plaintiff said to Dunseath: "Is this all right?" and defendant said in reply, "Yes; it is all right, Wainwright." He thought Butler said, "Yes, it is all right," or something. Later in his testimony, in answer to the question: "Didn't you ask Mr. Rosenthal any questions?" the plaintiff replied: "Well; I don't know that I did. I know well enough I didn't. He read the deed, and I asked, directed my conversation to Mr. Dunseath and Butler, if the deed was all right,

and as we had made our arrangements and agreements, and he said, 'Yes,' and I signed it."

A month or so after the signing of the deed plaintiff ascertained that the description of the driveway was wrong and that it did not contain the reservation concerning it according to the oral agreement. He sent Butler to the defendant to ask him to consent to a correction of the deed in these respects. Defendant was willing to have the misdescription of the driveway corrected, but refused to consent to any change in the reservation as to the driveway. Plaintiff testified that he was in the automobile business, and, as to education, had gone to school for three or four winters; that he did not understand legal terms and legal phraseology or legal documents; that he had known defendant about three years. He first knew him in Tonopah, where he had an office next to defendant's office, who was then a justice of the peace. He knew that defendant was a practicing lawyer. They were members of the same fraternal organization, and, owing to these circumstances, he relied upon defendant to see that the deed was drawn according to their understanding. He would not have signed the deed, he said, if he had known of the omission. He testified that he made the sale to accommodate his neighbor Butler, and left the whole matter of the deed to Butler and the defendant.

The foregoing is substantially the testimony, as appears from the written decision of the trial court, which we find among the papers on appeal, and which counsel have stipulated may be referred to, and from which the court concluded that both Butler and defendant were charged with the duty of explaining to the plaintiff in the office of Mr. Rosenthal, that the driveway, under the language used in the deed, did not convey an easement beyond the term of the occupancy of the plaintiff; and that their failure to do so constituted unconscionable conduct amounting to fraud.

4. In Crookston Improvement Co. v. Marshall, 57 Minn. 33, 59 N. W. 294, 47 Am. St. Rep. 612, the court

expressed the opinion that the mistake of a grantor, if known to the grantee, who conceals the truth from the grantor in order to secure a conveyance of land from him which he knows the grantor never intended or agreed to convey, is a case of a mistake of one party, accompanied by fraud or inequitable conduct of the other party, and is a good ground for a reformation of the instrument.

In Deischer et al. v. Price et al., 148 Ill. 383, 46 N. E. 105, there was a bill in equity to reform a deed. The deed by its terms conveyed all of the grantors' interest in certain lands, and the grantors insisted that the real intention of both grantors and grantee, at the time the deed was executed, was merely to convey to the grantee an estate for life, leaving the reversion in the grantors, and that, by mutual mistake, the deed was so drafted and executed as to convey the fee. The court said:

"The fair conclusion from all the evidence is, that at the time the deed was executed, Deischer [grantee], as well as the complainants, supposed the deed to be so drawn as to effectuate the intention of the parties, and therefore that the mistake was mutual. But if it should be admitted that he, at the time, was aware of the terms and legal effect of the deed, and that the mistake was wholly on the part of the complainants, his position would in no respect be improved. He must in that case have known that the complainants were executing the deed under a mistake, brought about by his own agency, and his conduct would then be a fraud, which, coupled with the mistake into which he had led the complainants, would entitle them to a reformation of the deed."

Mr. Pomeroy, in his work on Equity Jurisprudence, says:

"Equity has jurisprudence to reform written instruments, * * * where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties." 4 Pomeroy's Equity Jurisprudence (4th ed.), sec. 1376.

The law in this regard is stated in 23 R. C. L. pp. 328, 329, as follows:

"Where one party to an instrument has made a mistake, and the other party knows it and conceals the truth, such inequitable conduct accompanying a mistake is generally held to be sufficient ground for reformation of the instrument in question."

The evidence heretofore set forth makes it clear that plaintiff signed the deed under the mistaken belief that it contained language reserving the driveway to himself, his heirs, successors and assigns. It is likewise clear that Butler and the defendant knew that it did not contain this reservation. Butler and defendant caused the deed to be drawn by Rosenthal, and it was read to plaintiff in their presence. The circumstances are sufficient to show that plaintiff was relying on Butler and defendant to see that the deed was in accordance with the oral agreement, and that he was unfamiliar with the effect of the legal phraseology employed in deeds. When the deed was read to him in their presence, they not only failed to explain to him the limitation of the easement to plaintiff, but, according to Rosenthal, who was a disinterested witness, when plaintiff asked either Butler or the defendant if the deed was all right, they said it was according to the oral agreement. Defendant's version of the transaction at Rosenthal's office conflicts with the testimony of the others in several particulars, as well as with the testimony of Butler and plaintiff in regard to other matters, but the trial court found the preponderance of the evidence to be against his contentions.

5. We think that, under well-established principles, the evidence detailed, which the trial court considered the most creditable, warrants a reformation of the deed. In addition to the finding hereinbefore stated, the trial court made several findings which the defendant claims are either unsupported by the evidence or are contrary thereto. In this we do not agree. There is substantial evidence to support them. There is considerable stress placed upon the finding that Butler acted as the agent of the defendant in procuring the sale and conveyance of the property described in the deed from plaintiff to

defendant, and in this connection it is urged that there is no allegation of such agency in the amended complaint, and that the finding is contrary to the evidence. While such a finding is not necessary to sustain the decree, still there is ample evidence to support it. As the finding is not material, an allegation of agency in the amended complaint is not essential.

6. Counsel for plaintiff have made a motion for an order striking defendant's reply brief from the files of this court upon the ground that it contains irrelevant, impertinent, libelous, and scandalous matter. The motion is directed to certain statements in the brief, to the effect that, while the case was pending in court, the trial judge was contemplating returning to the practice of the law associated with counsel for the plaintiff, and that he did thereafter resign and form such partnership. The motion is supported by an affidavit of the attorney, who was formerly a district judge of the Second judicial district of this state, and, as such judge, presided at the trial and rendered the decision in this case. He states in the affidavit that judgment was rendered in the case on April 2, 1921, and that as such judge he had nothing whatever to do with the case subsequent to that date; that he resigned his position as such judge on the 31st day of May, 1921, and after resigning formed a law partnership with the attorneys who were acting for the plaintiff in the case; that he neither considered or discussed nor in any way had in mind the matter of a law partnership with said counsel until a few days before his resignation from the bench, and that no thought of such partnership was ever entertained, mentioned, or discussed by any one in his presence until several weeks after the decision. No counter affidavit or other evidence was produced by the defendant to contradict these averments. Consequently the intimation contained in the statements in the reply brief that the trial court was guilty of unfairness to

the defendant because, during the pendency of the case, he was contemplating resigning and forming a partnership with counsel for the plaintiff, rests entirely upon the fact that two months after his last judicial act in the case, the rendition of judgment, he resigned from the bench and formed such partnership. We are satisfied, not only from the affidavit, but from the excellent reputation which affiant enjoys as an able and upright jurist and practicing lawyer, that the reflections cast upon his judicial character in defendant's reply brief have no basis in fact, and were made for no other purpose than to induce this court to believe that the trial judge was prompted by unworthy motives in rendering judgment in favor of the plaintiff. We will not indulge such practice, but, on the contrary, must strongly condemn it as a breach of professional ethics.

It is therefore ordered that defendant's reply brief be and the same is hereby stricken from the files of this court. Authority for this order is abundant. Christensen v. Floriston Pulp and Paper Co., 29 Nev. 552–577, 92 Pac. 210; Pittsburg Ry. Co. v. Muncie and Portland Traction Co., 166 Ind. 466, 77 N. E. 941, 9 Ann. Cas. 165 and note, page 166.

Defendant's counsel also made a motion to strike plaintiff's opening brief from the files of this court, upon the ground that it contains irrelevant, impertinent, libelous, and scandalous matter. We find nothing objectionable in the plaintiff's brief, and the motion is hereby denied.

The judgment of the lower court is affirmed.