By the Court, HARDESTY, J.:
*156 This case presents us with an opportunity to clarify whether a person conducting a sale under NRS Chapter 116, governing nonjudicial foreclosure sales by a unit-owners' association (UOA), has the discretion to refuse to issue a foreclosure deed to the highest bidder at a foreclosure sale after payment has been made, when it is later determined that the delinquency amount may have been paid by the property owner before the sale.[2] We first hold that each party in a quiet title action has the burden of demonstrating superior title in himself or herself. We further hold that once a bid is accepted and payment is made, the foreclosure sale is complete and title vests in the purchaser, and the person conducting the sale has no discretion to refuse to issue the foreclosure deed. Lastly, we reaffirm our prior holdings that the correct standard for determining whether to set aside a sale on equitable grounds is whether there has been some showing of fraud, unfairness, or oppression affecting the sale.
Here, the purchaser demonstrated superior title by showing that it paid the sales price following a valid foreclosure sale. The burden of demonstrating that the delinquency was cured presale, rendering the sale void, was on the party challenging the foreclosure, who failed to meet its burden. Because we also conclude that the district court correctly found that there was no showing that fraud, unfairness, or oppression affected the sale, we hold that title vested in the purchaser's name and that the district court abused its discretion by setting aside the sale.
FACTS AND PROCEDURAL HISTORY
Respondent Hydr-O-Dynamic Corporation (HODC) was the legal owner and titleholder of real property located at 571 East Sunset Road in Henderson (the Property). The Property was located within a common-interest community comprised of commercial buildings overseen by Sunpac, a UOA formed under NRS Chapter 116. HODC became delinquent on the periodic assessments it was required to pay to the UOA, and respondent Nevada Association Services, Inc. (NAS), as the UOA's foreclosure agent, complied with all statutory presale requirements for a nonjudicial foreclosure sale of the Property pursuant to NRS 116.3116, including mailing default and sale notices certified with return receipt requested to HODC. The foreclosure sale was scheduled to take place on February 13, 2015, at 10 a.m.
On February 6, 2015, HODC's president mailed a check for the full amount of the delinquency ($6,554.09) to NAS via regular mail. At 10 a.m. on February 13, NAS, unaware that HODC had mailed a delinquency payment, began its property auctions, which included the subject Property. The auctions concluded at approximately 10:30 a.m. Appellant Resources Group, LLC, was the successful bidder on the Property, paying $350,000 in cashier's checks immediately following the conclusion of the auctions. That same day, at some point between 9:30 a.m. and 11 a.m., NAS received the check from HODC. NAS did not inform its general counsel that it had received the check until February 17, however, due to an intervening three-day weekend. NAS's general counsel then contacted Resources Group, explained the situation, and offered to return Resources Group's cashier's *157 checks, along with interest for the five days that had elapsed since the sale, in exchange for canceling the sale of the Property. Resources Group declined the offer, stating that it wanted either $1 million or the Property. Resources Group's agent informed NAS that he saw the mailman arrive on February 13 as he was leaving NAS's offices following the foreclosure sale, which would have been about 10:30 a.m., and thus, by the time NAS could have processed the payment, the foreclosure sale would have been completed. Despite this claim, NAS declined to issue a foreclosure deed to Resources Group.
Resources Group then filed a complaint against NAS, the UOA,[3] and HODC regarding title to the Property. After an unsuccessful summary judgment motion, the parties proceeded to trial. Ultimately, the district court entered judgment against Resources Group, finding that although HODC was delinquent in paying its assessments and the UOA's lien was perfected, Resources Group failed to demonstrate that the check curing the delinquency had not arrived before the foreclosure sale. The court discounted the testimony regarding the mailman as the agent had no specific memory distinguishing that day from any other. The court therefore concluded that Resources Group failed to meet its burden of showing that title should vest in its name.
The district court also concluded that the equities weighed in favor of setting aside the sale, reasoning that nothing in this court's recent line of NRS Chapter 116 foreclosure opinions "limit[ed] the exercise of equity to only those instances where there is gross inadequacy of price and fraud, unfairness or oppression that accounts for [an] inadequacy of price," even though that is a more common ground for setting aside a sale than it being deemed void due to sale irregularities. In balancing the equities, the court found that Resources Group tendered payment for the Property not knowing of the possible arrival of HODC's check, such that Resources Group arguably held bona fide purchaser status, but that setting aside the sale would not result in any prejudice to Resources Group as it would only suffer a loss of interest. The court also found that HODC did nothing more than deposit its delinquency-curing check in regular mail without any follow-up that NAS had received the check, but that the statutory scheme evidenced a legislative intent to allow post-sale redemption and that HODC would be severely prejudiced if the sale was not set aside. Based on these facts, the court concluded that the equities weighed in favor of HODC and set the sale aside such that HODC retained title to the Property.
DISCUSSION
I.
Resources Group argues that completion of a foreclosure sale and tender of the bid amount vests title to the property in the bidder, that the burden then lies on HODC to show that the sale was invalid because it cured the delinquency, and that HODC failed to meet that burden. Thus, Resources Group asserts that title to the Property vested in its name when it delivered the cashier's checks upon conclusion of the foreclosure sale and that there is no basis to set the sale aside.
Conversely, HODC argues that title passes to a successful bidder only at the conclusion of a valid foreclosure sale and payment of the bid amount. On this foundation, HODC argues that if its payment of the delinquency was received prior to the sale, the sale was invalid, and Resources Group had the burden to show that the sale was valid by demonstrating that HODC's check arrived after the sale or otherwise failed to cure the delinquency.
A.
While the "burden of proof [in a quiet title action] rests with the plaintiff to prove good title in himself," Breliant v. Preferred Equities Corp ., 112 Nev. 663, 669, 918 P.2d 314, 318 (1996), abrogated on other grounds by *158 Delgado v. Am. Family Ins. Grp., 125 Nev. 564, 570, 217 P.3d 563, 567 (2009), "a plaintiff's right to relief [ultimately] ... depends on superiority of title," W. Sunset 2050 Tr. v. Nationstar Mortg., LLC , 134 Nev. ----, ----, 420 P.3d 1032, 1034 (2018) (internal quotation marks omitted). And because "[a] plea to quiet title does not require any particular elements, ... each party must plead and prove his or her own claim to the property in question." Chapman v. Deutsche Bank Natl Tr. Co., 129 Nev. 314, 318, 302 P.3d 1103, 1106 (2013) (internal quotation marks omitted). Thus, we analyze the parties' respective claims to the Property.
B.
A foreclosure sale generally terminates a party's legal title to the property. See Bldg. Energetix Corp. v. EHE, LP, 129 Nev. 78, 86, 294 P.3d 1228, 1234 (2013) ; Charmicor, Inc. v. Bradshaw Fin. Co., 92 Nev. 310, 313, 550 P.2d 413, 415 (1976). This general rule is subject to certain limited exceptions, such as where the sale is void. See Energetix , 129 Nev. at 86, 294 P.3d at 1234 (noting that a lack of substantial compliance with the relevant statutes and a lack of proper notice are exceptions to the general rule); see also Bank of Am., N.A. v. SFR Invs. Pool 1, LLC, 134 Nev. ----, ----, 427 P.3d 113, 121 (2018), as amended on denial of reh'g (2018) (holding that a foreclosure sale on a lien is void where that lien has been satisfied prior to the sale "as the lien is no longer in default"); Henke v. First S. Props., Inc., 586 S.W.2d 617, 619-20 (Tex. Civ. App. 1979) (concluding that the payment of past-due installments cured a loan's default such that the subsequent foreclosure on the property was void); 1 Grant S. Nelson, Dale A. Whitman, Ann M. Burkhart & R. Wilson Freyermuth, Real Estate Finance Law § 7:21 (6th ed. 2014) (noting that a trustee's sale is void where there is no authorization to foreclose, and that there is no authorization to foreclose when the loan is not in default). To complete a valid foreclosure sale for unpaid assessments in Nevada, a UOA must comply with the provisions set forth in NRS Chapter 116. Relevant to the present case, the UOA must mail and record a notice of delinquent assessment, NRS 116.31162(1)(a), "a notice of default and election to sell," NRS 116.31162(1)(b), and a notice of foreclosure sale, NRS 116.311635(1)(a).[4] Moreover, a foreclosure sale is complete and title vests in the purchaser once payment has been made by the highest bidder. See Dazet v. Landry, 21 Nev. 291, 295, 30 P. 1064, 1066 (1892), overruled on other grounds by Golden v. Tomiyasu, 79 Nev. 503, 514-15, 387 P.2d 989, 995 (1963). After a sale is completed and payment is made, NRS 116.31164(3)(a) states that "the person conducting the sale shall ... [m]ake, execute and ... deliver to the purchaser" a deed conveying the property's title to the purchaser. (Emphasis added.)
Here, the district court found that it was uncontested that the sale complied with the statutory requirements, and that Resources Group made payment of the full bid amount in cashier's checks immediately after the auction. The record further suggests that NAS accepted the checks and provided Resources Group with a receipt of funds and instructions. If this constitutes a valid sale, NRS 116131164(3)(a) mandates that the person conducting the sale execute and deliver a deed of the Property to Resources Group.
II.
HODC argues, however, that it has superior title to the Property-despite the sale being properly conducted and Resources Group tendering payment of its bid-because it cured its default prior to the sale. In considering HODC's argument, we must address whether HODC has the burden of demonstrating that its delinquency-curing check arrived before the foreclosure sale, or whether this would be part of Resources Group's burden to prove that it has superior title to the Property. We conclude that the burden must lie with HODC. Payment of a debt is an affirmative defense, which the party asserting has the burden of proving. See NRCP 8(c) (listing payment as an affirmative defense);
*159 Schwartz v. Schwartz, 95 Nev. 202, 206 n.2, 591 P.2d 1137, 1140 n.2 (1979) ("Since the averments of an affirmative defense are taken as denied or avoided, each element of the defense must be affirmatively proved. The burden of proof clearly rests with the defendant." (citations omitted)). At least one court to address the issue agrees. See Nguyen v. Calhoun , 105 Cal.App.4th 428, 129 Cal.Rptr.2d 436, 446 (2003) ("The trustor-mortgagor or the person who alleges that a debt has been paid has the burden of proving payment." (internal quotation marks omitted)). Concluding that HODC bears the burden of proof on this issue, we now address whether it met that burden by proving that it paid the delinquency amount in full prior to the sale.[5]
Although HODC does not argue on appeal that it met its burden of proof in this regard because it alleges that the burden was on Resources Group, it is clear from the record that HODC could not meet its burden. The evidence showed that, in its normal course of business, the mail would typically be delivered to NAS between 9:30 a.m. and 11:30 a.m., and that NAS would open and date-stamp its mail on the same day that it was delivered. HODC's check was date-stamped on February 13, 2015, the date of the sale, but no witness could credibly remember when the mail arrived that day,[6] The district court stated, and we agree, that this evidence could only support a finding "that HODC's check arrived between 9:30 a.m. and 11:30 a.m. on February 13, 2015." Because the foreclosure sale ended at 10:30 a.m., this finding does not demonstrate that HODC paid the delinquency before the foreclosure sale. Thus, HODC failed to meet its burden and has therefore failed to demonstrate good title in itself.
III.
NRS 116.31164(3)(a) provides that, once payment has been made, the person that conducted "the sale shall ... [m]ake, execute and ... deliver to the purchaser ... a deed ... which conveys to the grantee all title" to the purchased property. The use of the word "shall" denotes a lack of discretion. Markowitz v. Saxon Special Servicing, 129 Nev. 660, 665, 310 P.3d 569, 572 (2013) ("The word 'shall' is generally regarded as mandatory."); cf. In re Montierth, 131 Nev. 543, 550, 354 P.3d 648, 652 (2015) ("A ministerial act is an act performed by an individual in a prescribed legal manner in accordance with the law, without regard to, or the exercise of, the judgment of the individual." (internal quotation marks omitted)); see also In re Rugroden, 481 B.R. 69, 78 (Bankr. N.D. Cal. 2012) ("When a statute clearly gives an official no choice but to act, then the act is ministerial "). NAS therefore lacked the discretion to refuse to deliver the deed based on information received after the sale was properly completed and after Resources Group tendered its bid. Having concluded that Resources Group has demonstrated good title and HODC failed to demonstrate it cured its default before the sale, we now address whether the sale should be set aside on equitable grounds.
The district court erred by setting the sale aside on equitable grounds
Resources Group argues that, under Shadow Wood, 132 Nev. 49, 366 P.3d 1105, *160 HODC must demonstrate that the sales price was grossly inadequate and that there was fraud, unfairness, or oppression that resulted in the low sales price in order for the foreclosure sale to be set aside on equitable grounds. Resources Group further argues that HODC is not entitled to equitable relief under Shadow Wood because the sale was conducted properly, lawfully, and fairly; because the sales price was not grossly inadequate; and because, even if the sales price was grossly inadequate, HODC failed to show that there was fraud, unfairness, or oppression that brought about that low price.[7]
Conversely, HODC contends that Shadow Wood should be read broadly to recognize a court's equitable power to set aside a foreclosure sale based on the entirety of the circumstances. HODC argues that the use of the court's equitable powers are warranted under the circumstances presented by this case because the delinquency-curing payment was made on the same day as the foreclosure sale.[8]
A district court's decision to set aside a foreclosure sale on equitable grounds is subject to an abuse of discretion standard of review. See Arsali v. Chase Home Fin. LLC , 121 So.3d 511, 519 (Fla. 2013) ("Trial courts' judgments pertaining to set asides of judicial foreclosure sales are now, as they always have been, subject to review by way of an abuse of discretion standard."). The party seeking to set aside the sale on equitable grounds bears the burden to "produce[ ] evidence showing that the sale was affected by fraud, unfairness, or oppression that would justify setting aside the sale." Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon, 133 Nev. ----, ----, 405 P.3d 641, 643 (2017) (internal quotation marks omitted).
In Shadow Wood we held that "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale [on equitable grounds]; there must also be a showing of fraud, unfairness, or oppression." 132 Nev. at 60, 366 P.3d at 1112. Shadow Wood also observed, however, that courts sitting in equity are required to analyze the totality of the circumstances when determining whether to set aside an HOA foreclosure sale on equitable grounds. See id. at 63, 366 P.3d at 1114 ("When sitting in equity, ... courts must consider the entirety of the circumstances that bear upon the equities."). HODC interprets "totality of the circumstances" to mean that this court is to look broadly at all of the circumstances surrounding the sale and the parties in determining whether to set aside the sale and not just focus on whether there was a low sales price that was brought about by fraud, oppression, or unfairness.
As we subsequently clarified in Nationstar , this totality-of-the-circumstances analysis is tied to the traditional rule for determining whether to set aside a sale on equitable grounds. 133 Nev., at ---- - ----, 405 P.3d at 648-49 ("[I]f the district court closely scrutinizes the circumstances of the sale and finds no evidence that the sale was affected by fraud, unfairness, or oppression, then the sale cannot be set aside, regardless of the inadequacy of price."). That is, if the totality of the circumstances demonstrates that the sale itself was affected by "fraud, unfairness, or oppression," then a court may *161 set the sale aside. This has been the rule in Nevada since 1963. See Golden, 79 Nev. at 515, 387 P.2d at 995 ("[I]t is universally recognized that inadequacy of price is a circumstance of greater or less weight to be considered in connection with other circumstances impeaching the fairness of the transaction as a cause of vacating it...." (emphasis added) (quoting Odell v. Cox, 151 Cal. 70, 90 P. 194, 196 (1907) )).
Here, the alleged equities in favor of setting aside the sale include those expressly stated by the district court: (1) "it was not unreasonable to assume that a check deposited in the main Las Vegas post office would be delivered within seven days to another Las Vegas address"; (2) Resources Group was not unduly prejudiced, as the only prejudice was a loss of interest on the money spent on the bid, "which could have been mitigated"; (3) HODC would suffer "extreme prejudice" if the sale were not set aside; and (4) "the Legislature intended to allow for the payment of community liens post sale by right of redemption."[9] In addition, the record suggests that there are possibly several other equities in favor of setting aside the sale. First, the district court found that, although unlikely, the check could have arrived earlier than February 13, 2015. Second, HODC's president testified that he was a small-business man and lacked the sophistication to know that he should follow up on his delinquency payment. Third, HODC did not have the keys to the mailbox for its property until late 2014, so it was unaware of any prior delinquency notices. Indeed, the first time that HODC allegedly received any notice of the delinquency or prior notices was when HODC's president was personally served with the notice of foreclosure in the parking lot of the Property on February 6, 2015.
The district court and HODC, however, fail to demonstrate that any of these equities constitute "fraud, unfairness, or oppression" that affected the sales price. Indeed, the district court acknowledged that the bid price was not inadequate and that there was no "evidence that the price was infected with unfairness, fraud or oppression." Even if we broadly interpreted the "unfairness" factor to include these additional equities, we conclude that the equities would still weigh against HODC. HODC asserted that it did not have access to its mail to receive the initial delinquent assessment notices regarding the Property,[10] but that was solely within HODC's control.[11] Additionally, with regard to the check, HODC only mailed it in the regular course of mail, one week before the sale. At trial, HODC's president conceded that he failed to pursue other options, such as overnight delivery or certified mail. HODC's president also acknowledged that he could have delivered the check in person or called NAS to ensure that the check had arrived, but failed to do so. Based on these facts, we agree with the district court that "HODC did nothing [beyond putting the check in the mail] to ensure the check had arrived and there were certainly a number of alternatives."
The record reflects that HODC's lack of diligence-not "fraud, unfairness, or oppression"-is what led to the foreclosure sale. See Moeller v. Lien, 25 Cal.App.4th 822, 30 Cal.Rptr.2d 777, 785 (1994) (holding that a party was not entitled to equity in a foreclosure sale where the party's "delays, negligence and inattention were the sole cause of the sale");
*162 Chase Fin. Servs., LLC. v. Edelsberg, 129 So.3d 1139, 1142 (Fla. Dist. Ct. App. 2013) (holding that a party's lack of diligence is insufficient for setting aside a foreclosure sale on equitable grounds). Accordingly, we conclude that the district court abused its discretion by setting aside the sale on equitable grounds.
CONCLUSION
We hold that Resources Group demonstrated superior title because it made payment of the bid amount upon conclusion of a foreclosure sale that complied with the statutory requirements, and HODC failed to demonstrate that the sale was void due to the deficiency being cured. Thus, NAS did not have the discretion to refuse to issue the foreclosure deed. We further hold that HODC is not entitled to equitable relief, as it has failed to demonstrate "that the sale was affected by fraud, unfairness, or oppression." Nationstar, 133 Nev. at ----, 405 P.3d at 643 (internal quotation marks omitted). Accordingly, we reverse the judgment of the district court and conclude that Resources Group is entitled to the foreclosure deed upon remand.
We concur:
Parraguirre, J.
Stiglich, J.
Douglas, Sr. J.

The 2015 Legislature substantially revised NRS Chapter 116. See Shadow Wood Homeowners Ass'n, Inc. v. NY. Cmty. Bancorp, Inc., 132 Nev. 49, 56 n.2, 366 P.3d 1105, 1109 n.2 (2016). The references in this opinion to NRS Chapter 116 statutes are to the version of the statutes in effect when the events in this case occurred, which was before the effective date of the 2015 amendments.

Resource Group later voluntarily dismissed the UOA without prejudice pursuant to NRCP 41(a)(1)(i).

The covenants, conditions, and restrictions (CC & Rs) governing the Property imposed the same requirements as those required by statute.

Resources Group argues that HODC waived the issue of payment because it did not plead it in its responsive pleadings below. A party waives an affirmative defense where the "party fails to raise the affirmative defense in any pleadings or any other papers filed with the court, including its answer, pretrial statement, or post-trial brief." City of Boulder City v. Boulder Excavating, Inc., 124 Nev. 749, 755 n.12, 191 P.3d 1175, 1179 n.12 (2008) (internal quotation marks omitted). Nevertheless, we have held "that an affirmative defense can be considered (if not pleaded) if fairness so dictates and prejudice will not follow." Ivory Ranch, Inc., v. Quinn River Ranch, Inc., 101 Nev. 471, 473, 705 P.2d 673, 675 (1985). Here, fairness dictates that we consider HODC's arguments regarding payment, as those arguments are crucial for determining whether the sale was void. In addition, no prejudice would follow because "[o]ne who bids upon property at a foreclosure sale does so at his peril," Henke, 586 S.W.2d at 620, and thus, if a sale is void, a purchaser should not be entitled to reap a windfall.

An agent of Resources Group testified he remembered seeing the mail being delivered after the foreclosure sale was completed, but the district court found that testimony not to be credible and we will not reassess witness credibility on appeal. See Ellis v. Carucci, 123 Nev. 145, 152, 161 P.3d 239, 244 (2007).

Resources Group also argues that HODC had no right to redemption under the CC & Rs or statutory law because the sale was conducted properly, and the UOA CC & Rs provide that a properly conducted sale vests title in the purchaser without the unit owner's equity or redemption. In Shadow Wood , however, this court held that "[h]istory and basic rules of statutory interpretation confirm our view that courts retain the power to grant equitable relief from a defective foreclosure sale when appropriate despite NRS 116.31166 ." 132 Nev. at 57, 366 P.3d at 1110-11 (emphasis added). Courts can also provide equitable relief despite the language in the CC & Rs. See McKnight Family, LLP v. Adept Mgmt. Servs., Inc., 129 Nev. 610, 615, 310 P.3d 555, 558 (2013) (recognizing the contractual nature of CC & Rs); Wainwright v. Dunseath, 46 Nev. 361, 366, 211 P. 1104, 1106 (1923) (holding that "courts of equity have the power to order the reformation of deeds [or] contracts").

HODC also argues that it should be granted equitable relief because Resources Group failed to demonstrate it had good title. Having already concluded that Resources Group demonstrated good title in itself, we do not address this argument further.

As noted earlier, the 2015 Legislature made substantial changes to NRS Chapter 116. As the revised version of NRS 116.3116 did not apply to the present case, and the 2014 version of the statute unambiguously did not allow for a right of redemption, the district court erred by gleaning an intent by the Legislature to provide for a post-sale right of redemption.

HODC does not dispute the sufficiency of the notices.

As HODC received, at least, the notice of foreclosure sale, it was aware that it needed to cure the deficiency before the date of the foreclosure sale as the notice provided as follows:
WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE.
(Emphasis added.) See NRS 116.311635(3)(b). The notice also provided the date of the sale; thus, HODC was on notice that the Property could be lost if the amount specified was not paid by February 12, 2015, not the date of the foreclosure sale.