**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 1 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC, | No.   20-17114 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-01934-RFB-BNW |
| v. | |
| THE LEGACY ESTATES PROPERTY OWNERS ASSOCIATION; PADESHAH HOLDINGS, LTD., | MEMORANDUM[*] |
| Defendants-Appellees, | |
| and | |
| NEVADA ASSOCIATION SERVICES, INC.; LAS VEGAS DEVELOPMENT GROUP, LLC, | |
| Defendants. | |

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware II, District Judge, Presiding

Argued and Submitted December 5, 2022
Pasadena, California

Before:  KELLY,[**] IKUTA, and CHRISTEN, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the

Plaintiff Nationstar Mortgage, LLC (Nationstar) filed suit against a homeowners association known as Legacy Estates Property Owners Association (Legacy Estates); the agent for Legacy Estates, Nevada Association Services., Inc. (NAS); Padeshah Holdings, Ltd. (Padeshah); and Las Vegas Development Group, LCC (LVDG).[1]  Nationstar's claim arises from a foreclosure sale.  Legacy Estates initiated the foreclosure to satisfy a lien for past due homeowner's assessments.  LVDG purchased the subject property and subsequently sold it to Padeshah.  Nationstar seeks an order declaring that it retained its interest in the subject property after the foreclosure sale or an order declaring that the foreclosure sale was void; or, in the alternative, damages for breach of Nevada Revised Statutes Section 116.1113 and wrongful foreclosure.  The district court granted summary judgment in favor of Legacy Estates and quieted title in favor of Padeshah.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo the order granting summary judgment, *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 719 (9th Cir. 2022), and we affirm in part, reverse in part, and remand.

**1. Excuse of Tender.**  Under Nevada law, "formal tender is excused when evidence shows that the party entitled to payment had a known policy of rejecting

---

U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[1] NAS and LVDG are not parties to this appeal.

such payments," *7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.* (*Perla Trust*), 458 P.3d 348, 349 (Nev. 2020) (en banc), and the party required to tender "had knowledge of this business practice," *id.* at 351. Here, the district court concluded that while Nationstar submitted evidence that NAS employed such a policy, Nationstar failed to submit any evidence demonstrating that its predecessor in interest, Bank of America, N.A. (BANA), knew of NAS's policy of refusing such payments.[2] We agree. The testimony of Chris Yergensen, Susan Moses, and David Stone demonstrates that NAS had a policy of rejecting payments for the superpriority portion of liens, but does not indicate when, if ever, BANA became aware of that policy. Nationstar also points to a brief NAS filed in an arbitration proceeding with BANA, but this evidence is no more helpful. Even if we accept that the brief put BANA on notice of NAS's policy, the brief was filed nearly four months after the foreclosure sale of the subject property. As such, Nationstar failed to raise a genuine dispute of material fact regarding BANA's knowledge of NAS's policy.

---

[2] Padeshah argues that testimony from depositions taken in other cases is improper evidence at summary judgment, but this is incorrect. *See, e.g.*, *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 323–24 (9th Cir. 1991) (holding that documents that cannot be admitted as depositions may still be admitted as affidavits so long as they were made on personal knowledge and set forth facts admissible in evidence).

**2. Fraud, Unfairness, or Oppression.** Under Nevada Law, a foreclosure sale may be set aside when the sales price is "affected by fraud, unfairness, or oppression." *Res. Grp., LLC v. Nev. Ass'n Servs., Inc.*, 437 P.3d 154, 161 (Nev. 2019) (en banc). Here, there is no question that the foreclosure sale price was very low, but "mere inadequacy of price is not in itself sufficient to set aside the foreclosure sale." *Id.* Instead, the sale price "should be considered together with any alleged irregularities in the sales process." *Id.* Nationstar makes three arguments that the sales process was otherwise affected by fraud, unfairness, or oppression.

First, Nationstar argues that the sale was unfair because NAS refused to provide a ledger from which the superpriority portion of the lien could be determined. The Nevada Supreme Court has not addressed this precise question, but its approach to related questions persuades us that it would reject Nationstar's argument.[3] For instance, in *Saticoy Bay, LLC Series 6132 Peggotty v. Copperfield Homeowners Association*, the Nevada Supreme Court considered a claim for breach of Section 116.1113 based on the respondent's failure to disclose whether a superpriority tender had been made. 498 P.3d 775, 2021 WL 5276629, at *1 (Nev.

---

[3] "In the absence of a [Nevada] Supreme Court decision, we must predict how the [Nevada] Supreme Court would decide the issue." *Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1300 (9th Cir. 1997), *amended*, 136 F.3d 1208 (9th Cir. 1998).

Nov. 10, 2021) (unpublished table decision). The court rejected the claim because, while Nevada Revised Statutes Section 116.31162 was later amended to require disclosure of this information, no such duty existed at the time of the alleged violation. *Id.* (comparing Section 116.31162(1)(b)(3)(II) (2017) with Section 116.31162 (2013)). Similarly, here, Section 116.31162(l)(b)(2)(I) now requires disclosure of "[t]he amount of the . . . lien that is prior to the first security interest," but no such requirement existed in 2012. *See* Nev. Rev. Stat. § 116.31162 (2005) (effective until 2013). Given that NAS had no statutory duty to disclose the superpriority amount, we conclude the Nevada Supreme Court likely would not regard the refusal to provide a ledger as an indication of fraud, unfairness, or oppression.

Second, Nationstar argues that NAS publicly represented that the sale would not extinguish the first deed of trust. The only evidence Nationstar puts forward to support this argument on appeal is a vague press release issued in connection with a seminar a year and a half before events relevant to this case. As the district court correctly concluded, "[t]he press release . . . [is] insufficient to establish that NAS represented that the foreclosure sale would not extinguish the first deed of trust during the relevant time periods for this case, and, more importantly, that this representation was known and relied on by [BANA's counsel] and Nationstar's predecessor-in-interest."

Third, Nationstar argues the fact the property is now owned by Padeshah, an entity owned and managed by the son of the pre-foreclosure owners, merits finding that Nationstar's interest in the property survived the foreclosure sale. The record contains no indication that the initial foreclosure sale to LVDG was tainted by Padeshah. As such, the district court was correct to find Padeshah's current ownership of the property does not amount to evidence of fraud, unfairness, or oppression.

Because Nationstar has failed to provide indications that fraud, unfairness, or oppression affected the sale price, Nationstar is not entitled to have the sale set aside on this basis.

**3. Statute of Limitations.** The district court concluded that the statute of limitations barred Nationstar's claims for breach of Section 116.1113 and wrongful foreclosure against Legacy Estates. It reasoned that Nationstar's claims arose at the time of the foreclosure sale on May 18, 2012, and were variously subject to three- or four-year statutes of limitations. Because the complaint in this case was filed August 15, 2016, the court ruled the claims to be time-barred. While Nationstar's appeal was pending in this court, the Nevada Supreme Court issued its decision in *U.S. Bank, N.A. v. Thunder Properties, Inc.*, 503 P.3d 299 (Nev. 2022) (en banc). There, the court held that "[t]he HOA foreclosure sale, standing alone, is not sufficient to trigger" the start of the limitations period for quiet title, rather

6

"something more is required," "such as the titleholder's repudiation of the lien." *Id.* at 306–07. The dispute here is about the statute of limitations for Nationstar's claims for breach of Section 116.1113 and wrongful foreclosure rather than quiet title, but at oral argument counsel for Legacy Estates conceded that *Thunder Properties* applies to this case. Because the district court did not have the benefit of *Thunder Properties*, we remand for consideration of whether "something more" occurred to trigger the limitations period.

**4. Quiet Title.** The district court quieted title in favor of Padeshah. On appeal, Nationstar argues that this was error because Padeshah did not plead a counterclaim for quiet title. Padeshah argues it did not need to plead a counterclaim because Nationstar sought a declaratory order regarding the property rights of all the parties pursuant to Nevada Revised Statutes Section 30.040. We know of no Nevada authorities that resolve this issue. The Nevada Supreme Court has explained that under Nevada Law "because '[a] plea to quiet title does not require any particular elements, . . . each party must plead and prove his or her own claim to the property in question." *Res. Grp.*, 437 P.3d at 158 (Nev. 2019) (alterations in original) (quoting *Chapman v. Deutsche Bank Natl Tr. Co.*, 302 P.3d 1103, 1106 (Nev. 2013)); *see also Shadow Wood Homeowners Ass'n v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1112 (Nev. 2016) (en banc) (recognizing at summary judgment that "the burden of proof rests with the party seeking to quiet title in its

7

favor"). Padeshah did not plead a counterclaim for quiet title, but in the district court it did request summary judgment in its favor, arguing that it held "title to the property free and clear." Further, it was Nationstar that initiated this suit, sought declaratory relief and quiet title, and named Padeshah as a party. Under these circumstances, the weight of authority leads us to conclude that the district court did not err by quieting title in favor of Padeshah. *See, e.g.*, 74 C.J.S. Quieting Title § 2 (Feb. 2023) (collecting cases and stating that the purpose of a quiet title action is to "finally settle and determine, *as among the parties*, all conflicting claims to the property in the controversy, . . . clear up all doubts or disputes concerning land . . . and decree to each party the interest or estate to which the party may be entitled" (emphasis added)); 65 Am. Jur. 2d Quieting Title § 1 (Feb. 2023) ("The purpose of a quiet title action is to finally settle and determine, as between the parties, all conflicting claims to the property in the controversy, and to decree to each party such interest or estate therein as he or she may be entitled to . . . ."); *id.* § 55 ("[I]f the defendant, by an appropriate pleading, asserts title to the property in question and asks to have title quieted in him or her as against the plaintiff, the court may render a decree granting such relief if the defendant has title and peaceable possession. In fact, the trial court may determine that, as between the parties to such an action, the defendant is the owner of the property even if the defendant makes no counterclaim.").

8

**AFFIRMED in part, REVERSED in part, and REMANDED.** The parties shall each bear their own costs on appeal.